IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER DESHAUN MONTGOMERY                                              PLAINTIFFS

v.                                      Civil No. 5:24-cv-05157-CDC

BLAINE MILLER, Benton County Drug Unit
(BCDU); JOSH COOKINGHAM, BCDU;
DETECTIVE ROBBINS, BCDU; DEPUTY
STRICKLAND, Benton County Detention
Center (BCDC), Work Detail Officer;
SERGEANT WIEBER, BCDC, Work Detail
Sergeant; LONDON WRIGHT, BCDC,
Trustee Inmate Officer; JAIL
ADMINISTRATOR MEGAN RUTLEDGE,
BCDC; and DEPUTY L. FRANKS, BCDC,
Trustee Inmate Officer                                                      DEFENDANTS

## **MAGISTRATE JUDGE'S SCREENING REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff, Christopher D. Montgomery ("Montgomery"), under 42 U.S.C. § 1983. The case was directly assigned to the undersigned Magistrate Judge. However, because not all parties to the action have consented to the jurisdiction of the undersigned, and this document will be dispositive of some of Montgomery's claims, this document will be filed as a Report and Recommendation and the case will automatically be reassigned to United States District Judge Timothy L. Brooks. 28 U.S.C. § 636(c); Rule 73 of the Federal Rules of Civil Procedure, and General Order 2024-02.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

---
[1] Enacted as part of the Prison Litigation Reform Act.

## I. BACKGROUND

According to the allegations of the Amended Complaint, Montgomery is a convicted prisoner incarcerated in the Benton County Detention Center ("BCDC"). (ECF No. 6 at 2). In Claim One, Montgomery alleges that on November 17, 2023, he was interviewed by Defendants Miller, Cookingham, and Robbins. *Id.* at 5. Montgomery alleges each of these Defendants violated his federal constitutional rights by treating him in a degrading manner and verbally abusing and threatening him during the interview. *Id.* at 5-6. Montgomery contends this conduct violated his First Amendment right "freedom of opinion and expression." *Id.* Additionally, Montgomery alleges Defendant Miller threatened to call the judges and his probation officers to have more parole revocation changes placed on him and Defendant Robbins threatened to have him sent to federal prison if he did not cooperate. *Id.* at 6. With respect to Defendants Miller and Robbins, Montgomery further alleges they violated his Eighth Amendment right to be free from cruel and unusual punishment when they had him placed on twenty-three-hour a day lock-down for twenty plus days without a disciplinary being issued or a hearing being held. *Id.* 5-6.

In Claim Two, Montgomery alleges that on December 22, 2023, Defendant Strickland began slandering his name and discriminating against him. (ECF No. 6 at 7). Specifically, Montgomery alleges Defendant Strickland began repeatedly calling him a drug dealer and liar. *Id.* Defendant Strickland further informed Montgomery "in a racial way" that he would never be a trustee or on work-detail again. *Id.*

On January 25, 2024, Montgomery alleges Defendant Strickland began reading his grievance form and took a picture of it to interfere with the grievance process. (ECF No. 6 at 7). When Montgomery attempted to address this issue with the lieutenant's, he asserts nothing was done. *Id.*

In Claim Three, Montgomery lists the following dates as the dates on which the events occurred: January 3, 2024, January 25, 2024, February 5, 2024, and February 12, 2024. (ECF No. 6 at 8. Montgomery alleges Defendants Wright and Franks discriminated against him based on race when they returned Inmate Nicholls ("Nicholls") to a position as a trustee/work-detail inmate despite Nicholls having been disqualified by Defendant Wieber and Franks. *Id.* at 9. According to Montgomery, if a trustee/work-detail inmate is disqualified or busted down, "they cannot return until the inmate's confinement is done at this jail." *Id.* Montgomery alleges they were both disqualified, no evidence ever materialized against him to justify the disqualification, but only Nicholls was given back a trustee/work-detail position. *Id.* at 9-10. Montgomery maintains Defendants Wieber and Franks showed favoritism towards Nicholls over Montgomery, an African American, because his brother is a famous country singer. *Id.* at 10-11.

Montgomery alleges Defendant Wieber racially discriminated against him when she forcefully made him take a urine sample on November 17, 2023, that was not ordered by a judge or court. (ECF No. 6 at 10). Defendant Rutledge is alleged to have discriminated against him by favoring the "Benton County Deputies['] actions over a Black African American Inmate." *Id.* at 11.

As relief, Montgomery seeks $150,000 in compensatory damages from each Defendant for emotional pain and suffering. He also seeks $30 million in punitive damages. Finally, he would like for the Defendants to be terminated.

## II. LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  ANALYSIS

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) each defendant acted under color of state law, and (2) that he or she violated a right secured by the constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

#### A.  Verbal Abuse and Threats

Montgomery claims Defendants Miller, Cookingham, and Robbins verbally abused and threatened him in a various ways including with further punishment. "Verbal threats do not

4

constitute a constitutional violation." *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993) (claims of general harassment and verbal harassment not actionable under § 1983); *O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials did not rise to the level of a constitutional violation). The only recognized exception to this rule is when the verbal abuse is accompanied by the individual being terrorized with threats of death. For example, in *Burton v. Livingston,* 791 F.2d 97, 100 (8th Cir. 1986), a guard who had been using racial epithets, "pointed a lethal weapon at the prisoner, cocked it, and threatened him with instant death." No similar grave allegations have been made in this case. Thus, accepting Montgomery's allegations as true, the facts still state no cognizable claim under § 1983.

### B. Defamation

Defamation alone is insufficient to support a claim under § 1983. *See e.g., Wade v. Goodwin,* 843 F.2d 1150, 1152 (8th Cir. 1988). In *Paul v. Davis,* 424 U.S. 693 (1976), the United States Supreme Court held a person's interest in his reputation is not considered liberty or property protected by the Due Process Clause of the Fourteenth Amendment. No cognizable defamation claim exists.

### C. Racial Discrimination

Montgomery who identifies himself as an African American, contends he was discriminated against based on his race when Nicholls, apparently a Caucasian, was placed back on the trustee/work detail, when Montgomery was forced to take a urine test, and when the reports or actions of the deputies were favored over his.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (internal quotations and citation omitted.)

Only *deliberate* discrimination is actionable under the Equal Protection Clause. *Personnel Adm'r. v. Feeney*, 442 U.S. 256, 273 (1979); *Washington v. Davis*, 426 U.S. 229, 239-48 (1976). "Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence, but it is most often proved with evidence that similarly situated inmates were treated differently." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

### (1) Trustee/Work-Detail Status

Montgomery maintains Nicholls was returned to trustee status because he was related to a country singer. While this may seem unfair or discriminatory to Montgomery, the factual allegations are insufficient to suggest that the alleged favoritism was based on Montgomery's race rather than being based. as Montgomery alleges, on Nicholls' relationship with a country singer. *Klinger v. Dep't of Corr.,* 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection"); *see also Battle v. Minn. Dep't of Corr.,* 40 Fed. App'x. 308 (8th Cir. 2002) (prisoners have no right to a particular job assignment). While the alleged conduct would demonstrate favoritism, it does not state a plausible claim of discrimination based on race.

### (2) Urine Sample

There is nothing in the bare allegation that he was forced to give a urine sample on November 17, 2023, to suggest this was the result of intentional and purposeful racial

6

discrimination. *See e.g., Moore v. Speybroeck,* 74 F. Supp. 2d 850, 854 (N.D. Ind. 1999) ("A plaintiff must allege specific facts substantiating his belief that he was singled out as a member of a group at least in part for the purpose of causing an adverse effect on the group"). In short, nothing in Montgomery's conclusory factual allegation suggests the existence of an improper motive based on his race as opposed to any other factor. No plausible claim of racial discrimination is stated.

### (3) Favoritism Towards Deputies

Similarly, there is nothing to suggest that a tendency to believe the reports of detention personnel over those of Montgomery is motivated by interests violative of the Equal Protection Clause. Montgomery does not allege that as a class African American inmates are believed less than Caucasian inmates or any other similar allegation to suggest the existence of invidious racial discrimination. No plausible claim is stated.

### D. Grievance Procedure

The existence of a grievance procedure does not confer any substantive constitutional right on the inmates. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1983). The failure to process a grievance is not by itself actionable under § 1983. *Id.* Likewise, it is well settled that prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (no constitutional right to have prison officials follow prison regulations); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) ("there is no § 1983 liability for violating prison policy").

While Montgomery has a constitutional right to file grievances, he has not alleged that Defendant Strickland prevented him from submitting the grievance. *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989) (First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures). Finally, while Montgomery may not be

retaliated against for the filing of a grievance, Montgomery's only factual allegation is that Defendant Strickland "tried retaliating against" him by reading and taking pictures of the grievance. Montgomery does not allege that any retaliatory adverse action was taken by Defendant Strickland. *Id.* (prisoners may not be retaliated against for having filed a grievance). No plausible claim has been stated.

### E. Transfer to Lock-down

The Court concludes Montgomery has asserted a plausible cause of action with respect to his transfer to administrative segregation. Montgomery has alleged that when he failed to cooperate with them Defendants Miller and Robbins had him placed on 23-hour lockdown. Transferring an inmate to administrative segregation and restricting his privileges for engaging in protected First Amendment activity states a cause of action. *See e.g., Royal v. Kautzky,* 375 F.3d 720, 722 (8th Cir. 2004) (finding that prisoner's First Amendment rights were violated when he was placed in administrative segregation for making complaints and filing grievances); *Palacio v. Goord,* No. 9:03-cv-0836, 2008 WL 87551, *5 (N.D.N.Y. Jan. 7, 2008) (Report and Recommendation--changing security level in response to a refusal to cooperate in police investigation constitutes a possible adverse action).

Additionally, "[p]risoners have a liberty interest in freedom from conditions of confinement that impose 'atypical and significant hardship' relative to 'ordinary incidents of prison life.'" *Spann v. Lombardi,* 65 F.4th 987, 991-92 (8th Cir. 2023) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). To determine if such a hardship is imposed, the Court looks to the duration and degree of the restrictions. *Id.*

In *Spann,* the Eighth Circuit declined to address the issue of whether Spann "enjoyed a clearly established liberty interest in avoiding assignment to administrative segregation." *Spann*,

65 F4th at 992. Instead, in reliance on the Supreme Court's opinion in *Wilkinson v. Austin,* 545 U.S. 209, 228-29 (2005), the Eighth Circuit held that even if Spann enjoyed such an interest, "a transfer to administrative segregation requires only informal, nonadversary due process procedures like those set forth in" *Hewitt v. Helms,* 459 U.S. 460 (1983) and *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1 (1979). *Id.*

> Informal due process requires only some notice of the reasons for the inmate's placement . . . and enough time to prepare adequately for the administrative relief. An inmate must be given an opportunity to present his views to a neutral decisionmaker, but is not entitled to a hearing with the inmate present. If the prison chooses to hold hearings, inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses. Informal due process also requires periodic review of placement in administrative segregation.

*Id.* (internal quotation marks and citations omitted).

Here, Montgomery has alleged he received no notice or hearing. A plausible claim has been stated.

### IV. CONCLUSION

Accordingly, it is recommended that all claims against Defendants Cookingham, Strickland, Wieber, Wright, and Rutledge be dismissed for failure to plausible claims under § 1983. 28 U.S.C. § 1915A.

This leaves for later resolution Montgomery's claims against Defendants Miller and Robbins. By separate order, Montgomery will be directed to file a Second Amended Complaint regarding these claims.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**Status of Referral:** This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.

**RECOMMENDED** this 26th **day of September 2024**.

/s/ *Christy Comstock*

HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE